UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| LEON D. BODLE, | : | CIVIL NO: 4:12-CV-02425 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| ERIC LINHARDT, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I. **Introduction.**

This case comes before the court for a statutorily mandated screening review. The plaintiff, Leon Bodle, claims that the defendants violated his constitutional rights resulting in his wrongful conviction in the Court of Common Pleas of Lycoming County, Pennsylvania. We have reviewed the complaint in accordance with 28 U.S.C. § 1915A, and we conclude that, with the exception of a Fourth Amendment search and seizure claim against two of the twenty-one defendants, it fails to state a claim upon which relief may be granted. We recommend that Bodle's application for leave to proceed *in forma pauperis* be granted, that all claims, except the Fourth Amendment search and seizure claim, be dismissed without prejudice, and that Bodle be granted leave to file an amended complaint.

## II. **Factual Background and Procedural History.**

Bodle, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 case by filing a complaint. He also filed an application for leave to proceed *in forma pauperis*. Bodle claims that the defendants violated his constitutional rights in numerous ways and that the violations of his rights resulted in his wrongful conviction.[1] He names twenty-one individuals and entities as defendants.

### A. **Municipal Defendants.**

The first group of defendants consists of the following municipal police defendants and municipal entities: the Old Lycoming Township Police Department, Chief William Soloman, Sergeant Christopher Kriner, Officer Michael Samar, and Old Lycoming Township and its Board of Supervisors. Bodle alleges that defendants Kriner and Samar used coercion and threats to obtain a false confession from him. According to Bodle, they then tampered with the digital recording of the interrogation to suit their needs for court. Bodle further alleges that defendants

---

[1] Bodle does not specify the nature of his conviction. A review of the docket sheets from his criminal cases in the Court of Common Pleas of Lycoming County, however, reveals that he was convicted of numerous sexual crimes involving minors and possession of child pornography. *See* Criminal docket sheets in the following cases: CP-41-CR-0002072-2008; CP-41-CR-0001997-2008; and CP-41-CR-0000743-2009 (available on the website of the Unified Judicial System of Pennsylvania: http://ujsportal.pacourts.us).

Kriner and Samar withheld exculpatory evidence from the defense. Additionally, he complains about a search conducted by Kriner and Samar. He alleges that he signed a consent form authorizing a search for a computer and computer-related accessories and that defendants Kriner and Samar entered his mother's home to seize the computer and computer-related accessories without identifying themselves or informing his mother why they were there. Defendants Kriner and Samar also allegedly searched through desk drawers, a bedroom closet, an entertainment center, and under bookshelves and beds, and seized noncomputer-related items, all of which fell outside of the scope of the warrant they had. Additionally, in Bodle's view, defendants Kriner and Samar did not follow recognized forensic digital collection procedures, improperly secured sensitive equipment, and transported the computer and accessories in a vehicle with an unshielded two-way radio, thereby risking potential damage or destruction of exculpatory evidence.

According to Bodle, Old Lycoming Township and its Board of Supervisors were responsible for supervising defendants Kriner and Samar, and Chief Soloman was responsible for their lack of proper training. Bodle alleges that defendants Old Lycoming Township Police Department, Chief Soloman, Old Lycoming Township and its Board of Supervisors failed to have written policies and procedures in place regarding the collection, storage, and processing of computer and electronic

evidence, regarding approved methods for interrogation and/or interview techniques for individuals not in custody, and regarding interview methods and techniques of suspected juvenile sex offense victims.  Bodle alleges that the failure to have such policies and procedures in place allowed individual officers to basically do what they wanted.

**B.  Lycoming County Defendants.**

The second group of defendants consists of Lycoming County, the Lycoming County District Attorney's Office, the Lycoming County Commissioners, the Lycoming County Prothonotary's Office, and various individuals employed by such offices.  With regard to the Lycoming County District Attorney's Office, District Attorney Eric Linhardt, Assistant District Attorney Mary C. Kilgus, and Assistant District Attorney Kenneth Osokow, Bodle alleges that these defendants withheld exculpatory evidence from the defense and failed to investigate information given to them about exculpatory evidence involving several accusers, which evidence, according to Bodle, would have shown the accusations against him to be false. Bodle further alleges that although defendant Osokow sat in on part of his criminal trial, Osokow was later found in the jury lounge with the empaneled jury purportedly as part of the jury pool for a separate civil trial.  Bodle contends that Osokow's

presence in the jury lounge created the potential to compromise juror impartiality. He seeks to hold Lycoming County, the Lycoming County Commissioners, and the Lycoming County District Attorney's Office responsible for the actions of defendants Linhardt, Kilgus, and Osokow.

Bodle further alleges that the Lycoming County District Attorney's Office and Linhardt and the Lycoming County Prothonotary's Office and it supervisor, Suzanne Fedele, failed to provide him with documents requested through a Post Conviction Relief Act petition. The documents included transcripts of pretrial, trial, and posttrial proceedings, discovery, presentence investigation reports, reports of the Pennsylvania Sexual Offender Assessment Board, and other related material. According to Bodle, the failure to provide these documents hampered his ability to proceed with appeals and to assist his attorney with the postconviction process.

## C. **Commonwealth Defendants.**

The third group of defendants consists of the Pennsylvania Sexual Offender Assessment Board; Cyril Townsend Velkoff, a psychologist and member of the Sexual Offender Assessment Board; the Pennsylvania Board of Probation and Parole; and Thomas Trussal, a computer forensics expert with the Pennsylvania State Police. Bodle alleges that defendant Trussal failed to follow accepted standards of

forensic computer examination as to exculpatory evidence, and Trussal admitted his failure in sworn testimony. As to the rest of the Commonwealth defendants, Velkoff evaluated Bodle, but, according to Bodle, Velkoff used only subjective material in his evaluation, such as police reports, court documents, and victim statements, while denying Bodle's request for objective diagnostic testing. Although Velkoff could not place Bodle into any of the categories established by the Sexual Offender Assessment Board for sexually violent predators, he placed Bodle into a "Not Otherwise Specified" category, which, Bodle alleges, made it extremely difficult, if not impossible, for him to defend himself at the hearing to determine whether he is a sexually violent predator. Although aware that on the advice of counsel Bodle could not answer most of his questions because of pending appeals, Velkoff allegedly conducted an hour-long interview of Bodle and then testified at the hearing that Bodle was evasive during the interview. Bodle seeks to hold the Sexual Offender Assessment Board and the Pennsylvania Board of Probation and Parole liable as the government entities that supervised and approved the methods of Velkoff.

### D.  Sugar Valley Defendants.

The fourth and final group of defendants consists of the Sugar Valley Rural Charter School Board of Trustees; Logan Coney, the Chief Administrator and CEO

of the Sugar Valley Rural Charter School; Carrie Nixon, the Special Education Administrator at the School; Nicki Fravel, a special education teacher; and a group called the Sugar Valley Concerned Citizens. Bodle alleges that Coney, Nixon, and Fravel withheld exculpatory evidence from the defense. This evidence included knowledge of the accusers' propensity for untruthfulness and specific evidence of one accuser's prior false accusation against another individual. Bodle also alleges that Coney, the Sugar Valley Rural Charter School, and its Board of Trustees withheld school records that were subpoenaed by defense counsel. Bodle alleges that defendant Sugar Valley Concerned Citizens owns the land on which the Sugar Valley Rural Charter School sits and that many of its members are employees of the school and were aware of what was taking place on its property.[2] Bodle seeks to hold the Sugar Valley Rural Charter School Board of Trustees liable for failing to properly supervise its administrators and employees. Similarly, Bodle seeks to hold Sugar Valley Concerned Citizens liable for failure to supervise the actions of the Sugar Valley Rural Charter School and its administrators and employees.

Bodle seeks an order requiring the defendants to provide him and his criminal defense attorney with the exculpatory evidence that has been withheld, an order requiring defendants Velkoff and the Sexual Offender Assessment Board to pay for

---

[2] Bodle does not allege what was taking place on the property.

an independent psychologist to objectively evaluate and/or examine him, and

punitive damages.

## III. Discussion.

### A. Screening of *Pro Se* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases that seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir.2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than

9

allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679,

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir.2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief

beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B. Bodle's Claims that Several of the Defendants Withheld Exculpatory Evidence, Destroyed or Failed to Preserve Exculpatory Evidence, and Tampered with Other Evidence Are Barred by the Favorable-Termination Rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).**

Bodle claims that defendants Kriner, Samar, Linhardt, Kilgus, Osokow, Coney, Nixon, Fravel, and the Sugar Valley Rural Charter School and its Board of Trustees withheld exculpatory evidence and that defendants Kriner and Samar tampered with the recording of his confession. These claims are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

The plaintiff in *Heck* filed a 42 U.S.C. § 1983 action against two county prosecutors and an Indiana State Police investigator challenging his manslaughter conviction. 512 U.S. at 478-79. He alleged that the defendants engaged in an unlawful, unreasonable, and arbitrary investigation which led to his arrest; that the defendants knowingly destroyed exculpatory evidence; and that the defendants caused an illegal voice identification procedure to be used at trial. *Id.* at 479. In affirming the lower court's dismissal of the action, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render

a conviction or sentence invalid, a Section 1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such [a] determination,

or called into question by a federal court's issuance of a writ of habeas corpus, 28

U.S.C. § 2254." *Id.* at 486-87, 490 (footnote omitted). "Thus, when a state prisoner

seeks damages in a § 1983 suit, the district court must consider whether a judgment

in favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated." *Id.*

The rationale of the Court in *Heck* was based, in part, on a desire to avoid

parallel litigation over the issues of probable cause and guilt, to prevent the creation

of two conflicting resolutions arising out of the same transaction, and to preclude a

convicted criminal defendant from collaterally attacking a conviction through a civil

suit. *Royal v. Durison,* 254 F. App'x 163, 165 (3d Cir. 2007). Even if the plaintiff

has exhausted available state remedies, he has no cause of action under § 1983 unless

and until the conviction or sentence is reversed, expunged, invalidated, or impugned

by the grant of a writ of habeas corpus. *Heck, supra*, 512 U.S. at 489. "[A] state

prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief

sought (damages or equitable relief), no matter the target of the prisoner's suit (state

13

conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).

In this case, Bodle alleges that the police defendants, the district attorney defendants, and the school defendants withheld exculpatory evidence. He also alleges that defendants Kriner and Samar tampered with evidence. Success on these claims would necessarily demonstrate the invalidity of his conviction. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011)(citing *Heck* and stating that because a claim, under *Brady v. Maryland,* 373 U.S. 83 (1963), that exculpatory evidence was withheld, "when successful postconviction, necessarily yields evidence undermining a conviction[,] . . . *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."); *Dukes v. Pappas*, 405 F. App'x 666, 668-69 (3d Cir. 2010)(holding that *Brady* claim barred by the rule of *Heck*); *Smith v. Holtz,* 87 F.3d 108, (3d Cir. 1996)(concluding that claims that defendants suppressed exculpatory evidence and contrived inculpatory evidence did not accrue under *Heck* until the Pennsylvania Supreme Court ordered the charges dismissed), *abrogated in part on other grounds by Wallace v. Kato,* 549 U.S. 384, 393 (2007)(holding that *Heck* applies only when an action would impugn an outstanding criminal conviction not merely when an action would impugn an anticipated future conviction).

Therefore, Bodle's claims in this case that the defendants withheld exculpatory evidence and that defendants Kriner and Samar tampered with the recording of his confession are not cognizable unless or until Bodle's conviction has been set aside. Bodle has not alleged that his conviction has been set aside. Accordingly, as pleaded these claims are barred by the favorable-termination rule of *Heck*.

Bodle also claims that defendants Kriner and Samar did not follow recognized forensic digital collection procedures, improperly secured sensitive equipment, and transported the computer and accessories in a vehicle with an unshielded two-way radio, thereby risking potential damage or destruction of exculpatory evidence. He further claims that defendant Trussal failed to follow accepted standards of forensic computer examination as to exculpatory evidence. Construed liberally, these claims assert that the defendants destroyed or failed to preserve exculpatory evidence. Such claims, however, are also barred by the favorable-termination rule. *See Heck, supra,* 512 U.S. at 490 (holding that prisoner's §1983 claim that the defendants, among other things, knowingly destroyed exculpatory evidence is not cognizable unless or until his conviction has been invalidated).

Like the underlying claims regarding exculpatory evidence, success on Bodle's claims against the municipal and supervisory defendants for failing to supervise the other defendants and for failing to have policies in place regarding the

collection and storage of evidence (which failure, Bodle claims, led to the suppression or failure to preserve exculpatory evidence) would also demonstrate the invalidity of his conviction. Thus, like the underlying claims, those claims are barred by the favorable-termination rule of *Heck. See generally, Munchinski v. Soloman,* Nos. 06-4093, 07-1345, 2007 WL 3121331 at *2 (3d Cir. Oct. 26, 2007)("We also agree with the Court's reasoning that *Heck v. Humphrey* bars Munchinski's claims of malicious prosecution and denial of a right to a fair trial, as well as his conspiracy claim, state-tort claims, and municipal liability claim to the extent they rely on the invalidity of his conviction.").[3]

---

[3] We note that Bodle's Fourth Amendment search and seizure claim against defendants Kriner and Samar is not necessarily barred by *Heck. See Heck, supra,* 512 U.S. at 487 n.7 (noting that because of doctrines like independent source, inevitable discovery and harmless error, a successful unreasonable search claim would not necessarily imply that the plaintiff's conviction was unlawful). Similarly, Bodle's claim that defendants Kriner and Samar coerced him into confessing are not necessarily barred by *Heck. See Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996)(concluding that because harmless error analysis applies to the admission at trial of a coerced confession, judgment in favor of the plaintiff on his § 1983 action challenging his confession will not necessarily demonstrate the invalidity of his conviction, and, thus, the § 1983 claim is not barred by *Heck*).

## C. Bodle's Claim of False Confession Against Kriner and Samar Fails to State a Claim Upon Which Relief May Be Granted.

Bodle alleges that defendants Kriner and Samar used coercion and threats to obtain a false confession from him. At the outset, to the extent that Bodle is attempting to raise a Fifth Amendment self-incrimination claim, we conclude that the complaint fails to state a claim upon which relief may be granted. The Fifth Amendment is not violated merely by coercive interrogation techniques. *See Chavez v. Martinez,* 538 U.S. 760 (2003). Rather, "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Id.* at 770 (emphasis in original). Bodle has not alleged facts from which it can reasonably be inferred that he was compelled to be a witness against himself, i.e. he has not alleged that the confession was used against him at trial. Additionally, even if he had alleged that the confession was used against him at trial, the use of the confession would have been the work of the prosecutor not defendants Kriner and Samar. *See generally, Yarris v. County of Delaware,* 465 F.3d 129, 143 (3d Cir. 2006)(stating that "the introduction in evidence of the allegedly false testimony was the work of prosecutors—not the CID Detectives—and is covered by absolute prosecutorial immunity" and that "[w]e perceive no support—and Yarris has identified no support—for the proposition that the use of

impermissible interrogation techniques in securing statements prior to their use in court constituted an independent violation of Yarris's constitutional rights").

Certain interrogation techniques may violate a suspect's right to substantive due process. *See Chavez, supra*, 538 U.S. at 780. The substantive component of the Due Process Clause limits what the government may do regardless of the fairness of the procedures that it employs. *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399 (3d Cir. 2000). "'[T]he core of the concept' of due process is 'protection against arbitrary action.'" *Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006)(quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," and executive action violates substantive due process only when the behavior of the governmental officer is so egregious and so outrageous that it shocks the conscience. *Id.* Although Bodle alleges in general terms that defendants Kriner and Samar used coercion and threats to obtain a false confession, he does not allege specifically what they did. He has not alleged any conduct on the part of defendant Kriner or Samar that would shock the conscience. Accordingly, the complaint fails to state a substantive due process claim upon which relief may be granted.

**D.  The Complaint Fails to State a Claim Upon Which Relief May Be Granted Against the Municipal Defendants.**

Bodle alleges that Old Lycoming Township and its Board of Supervisors were responsible for supervising defendants Kriner and Samar and that Chief Soloman was responsible for their lack of proper training.  He alleges that defendants Old Lycoming Township Police Department, Chief Soloman, Old Lycoming Township and its Board of Supervisors failed to have written policies and procedures in place regarding the collection, storage, and processing of computer and electronic evidence, regarding approved methods for interrogation and/or interview techniques for individuals not in custody, and regarding interview methods and techniques of suspected juvenile sex offense victims.  Bodle alleges that the failure to have such policies and procedures in place allowed individual officers to basically do what they wanted.  He also seeks to hold the Sugar Valley Rural Charter School Board of Trustees and the Sugar Valley Concerned Citizens liable for the alleged failure of school officials to turn over exculpatory evidence to the defense.

As set forth above, like the underlying claims regarding exculpatory evidence, the claims against the municipal and supervisory defendants for failing to supervise other defendants and for failing to have policies in place regarding the collection and storage of evidence (which failure, Bodle claims, led to the suppression or failure to preserve exculpatory evidence) are barred by the favorable-termination rule of *Heck.*

We have concluded, however, that the complaint states a Fourth Amendment search and seizure claim against defendants Kriner and Samar and that that claim is not barred by *Heck,* but to the extent Bodle is seeking to hold the municipal defendants liable for Fourth Amendment violations, the complaint fails to state a claim upon which relief may be granted.

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978). A municipality may be liable under 42 U.S.C. § 1983, however, if it subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011). To state a claim against a municipality, the plaintiff must allege that the violation of his rights was caused either by a policy or custom of the municipality. *Monell, supra,* 436 U.S. at 694; *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). There must be a direct causal link between the policy or custom and the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

Bodle has not alleged facts from which it can reasonably be inferred that the municipal defendants had a policy regarding searches and seizures that lead to a violation of his constitutional rights. Accordingly, the complaint fails to state a claim upon which relief may be granted against the municipal defendants.

**E. The District Attorney Defendants Are Entitled to Absolute Immunity from Bodle's Claims that They Withheld Exculpatory Evidence.**

In addition to Bodle's exculpatory-evidence claims being barred by the favorable-termination rule of *Heck,* the District Attorney defendants are entitled to absolute prosecutorial immunity from those claims.

"Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris, supra,* 465 F.3d at 134-35 (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)). There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled only to qualified immunity, public officials who perform 'special functions' are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or

intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz, supra,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008). Absolute immunity, however, does not apply to administrative or investigative actions unrelated to initiating or conducting judicial proceedings. *Id.*

Prosecutors are shielded by absolute immunity for actions which are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such activities include activities undertaken while in court as well as selected out-of-court behavior intimately associated with the judicial phases of litigation. *Kulwicki, supra,* 969 F.2d at 1463. The decision to initiate a prosecution is at the core of a prosecutor's judicial role, and a prosecutor is absolutely immune when making such a decision even if he or she acts without a good faith belief that any wrongdoing has occurred. *Id.* at 1463-64. A prosecutor is

also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina, supra,* 522 U.S. at 129. Further, "[t]he 'deliberate withholding of exculpatory information' is included within the 'legitimate exercise of prosecutorial discretion.'" *Yarris, supra,* 465 F.3d at 137 (quoting *Imbler, supra,* 424 U.S. at 431–32 n. 34)). Thus, '[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Id.*

Additionally, although a prosecutor's training of subordinates and supervision of subordinates are prosecutorial functions that are administrative in nature, the training of assistant district attorneys to exercise their prosecutorial duties is a function that is directly connected to a prosecutor's trial advocacy duties and, therefore, prosecutorial immunity extends to the training and supervision of subordinates as to the subordinates' performance of prosecutorial acts. *Van de Kamp v. Goldstein,* 555 U.S. 335, 344 (2009).

In this case, Bodle claims that the district attorney defendants withheld exculpatory evidence from the defense prior to trial. Because the district attorney defendants were acting in their prosecutorial capacities in withholding evidence, they are entitled to absolute immunity from Bodle's claims.

**F. The Complaint Fails to State a Claim Upon Which Relief May Be Granted Against Defendant Osokow Based on his Presence in the Jury Lounge.**

Bodle alleges that, although defendant Osokow sat in on part of his criminal trial, Osokow was later found in the jury lounge with the empaneled jury purportedly as part of the jury pool for a civil trial. Bodle contends that Osokow's presence in the jury lounge created the potential to compromise juror impartiality. He has not, however, alleged that Osokow actually had any contact with the members of his jury or that Osokow's presence in the jury lounge had any effect on his case or otherwise violated his constitutional rights. Accordingly, the complaint fails to state a claim upon which relief may be granted against defendant Osokow based on his alleged presence in the jury lounge.

**G. The Complaint Fails to State an Access-to-the-Courts Claim Upon Which Relief May Be Granted Based on the Denial of Documents During Post-Conviction Proceedings.**

Bodle alleges that the Lycoming County District Attorney's Office and Linhardt and the Lycoming County Prothonotary's Office and it supervisor, Suzanne Fedele, failed to provide him with documents requested through a Post Conviction Relief Act petition. According to Bodle, the failure to provide these documents hampered his ability to proceed with appeals and to assist his attorney with the

24

postconviction process. We construe this claim as a claim of denial of access to the courts.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008). "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-415 (2002). The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must allege an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.* Like any other element, the underlying cause of action "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Here, Bodle's complaint fails to state an access-to-the-courts claim upon which relief can be granted. In its present form, the complaint simply does not set forth well-pleaded facts that meet the legal requisites for an access-to-the-courts claim. Although Bodle alleges in a conclusory fashion that the denial of documents

hampered his ability to proceed with appeals, he has not alleged facts from which it can reasonably be inferred that he had a nonfrivolous challenge to his conviction or sentence.  Nor has he alleged how the documents that were not provided would have supported his appeals.  Moreover, his allegations indicate that he was represented by counsel during the postconviction process, but he has not alleged that his counsel was not able to obtain the necessary documents.  Because Bodle has not alleged facts from which it can reasonably be inferred that the failure to provide documents resulted in the loss of a nonfrivolous challenge to his conviction or sentence or prejudiced him in the litigation of a challenge to his conviction or sentence, he has not alleged an actual injury to his right of access to the courts.  Therefore, the complaint fails to state a claim of a denial of access to the courts upon which relief can be granted.

In addition, Bodle has not alleged facts from which it can reasonably be inferred that defendants Linhardt and Fedele were personally involved in denying him the documents.  Because "[l]iability may not be imposed under § 1983 on the principle of *respondeat superior*," *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995), defendants Linhardt and Fedele cannot be liable merely because they were the head of their offices.

Moreover, governmental entities, such as the Lycoming County District Attorney's Office and the Lycoming County Prothonotary's Office, also cannot be liable on the basis of *respondeat superior*. *See Monell, supra,* 436 U.S. at 691. Rather, as stated earlier, a municipality or other local government may be liable under 42 U.S.C. § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick, supra,* 131 S.Ct. at 1359 (quoting 42 U.S.C. § 1983). To impose liability on a municipality, a plaintiff must establish that an official municipal policy caused his injury. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

Bodle has not alleged facts from which it can reasonably be inferred that the Lycoming County District Attorney's Office or the Lycoming County Prothonotary's Office had a policy to deny documents to litigants in postconviction proceedings. Accordingly, the complaint fails to state a claim upon which relief may be granted against these defendants.

## H. **Bodle's Claims Against the Pennsylvania Board of Probation and Parole and the Sexual Offender Assessment Board Are Barred by the Eleventh Amendment.**

Bodle names the Pennsylvania Board of Probation and Parole and the Pennsylvania Sexual Offender Assessment Board as defendants. Because these entities are part of the Commonwealth of Pennsylvania, they are entitled to Eleventh Amendment immunity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)(quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).

In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)(per curiam).  A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate States' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority.  *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).

The Pennsylvania Board of Probation and Parole and the Pennsylvania Sexual Offender Assessment Board[4] are state agencies.  The Commonwealth of

---

[4] Although Bodle refers to this defendant as the Pennsylvania Sexual Offender Assessment Board, the correct name of the defendant is the "State Sexual Offenders Assessment Board." *See* 42 Pa.C.S.A. § 9799.12 (defining "Board" as "The State Sexual Offenders Assessment Board.").  The Board was created in 1995 by Pennsylvania law, *see* 42 Pa.C.S.A. § 9799.3, its members are appointed by the Governor, *see* 42 Pa.C.S.A. § 9799.35(b), and its support staff is provided by the Pennsylvania Board of Probation and Parole, *see* 42 Pa.C.S.A. § 9799.35(e).  Under Pennsylvania law, the Governor is authorized to direct the Board, along with other Commonwealth agencies, to create systems to administer Pennsylvania's law regarding sexual offender registrations and assessments. *See* 42 Pa.C.S.A. § 9799.29 ("The Governor shall direct the Pennsylvania State Police, the Pennsylvania Board of Probation and Parole, the board, the Department of Corrections, the Department of Transportation and any other agency of the Commonwealth that the Governor deems necessary to collaboratively design, develop and implement an integrated and secure system of communication, storage and retrieval of information to assure the timely, accurate and efficient administration of this subchapter.").

Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A. §

8521(b), and 42 U.S.C. § 1983 does not override a State's Eleventh Amendment

immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).  Accordingly, Bodle's claims

against the Pennsylvania Board of Probation and Parole and the Pennsylvania Sexual

Offender Assessment Board are barred by the Eleventh Amendment.


## I. **Defendant Velkoff Is Entitled to Absolute Immunity from Bodle's Claims Against Him.**

Under Pennsylvania law, the sentencing court orders the State Sexual

Offenders Assessment Board to assess, before sentencing, an individual convicted of

certain offenses. 42 Pa.C.S.A. § 9795.4(a).[5]  A member of the State Sexual Offenders

Assessment Board then conducts an assessment of the individual to determine

whether the individual should be classified as a sexually violent predator. *Id.* at

§ 9795.4(b).  After the assessment is complete, the court holds a hearing to determine

whether the individual is a sexually violent predator. *Id.* at § 9795.4(e)(1).  Both the

individual and the district attorney are given notice of the hearing and given an

opportunity to be heard, to call witnesses, including expert witnesses, and to cross-

---

[5] 42 Pa.C.S.A. §9795.4, which was in effect at the relevant time in this case, expired December 20, 2012, and 42 Pa.C.S.A. § 9799.24(a) took its place.  The two statutes are the same in all material respects as to the assessment and hearing provisions cited above.

examine witnesses. *Id.* at 9795.4(e)(2). In addition, the individual has the right to counsel and to have counsel appointed to represent him if he cannot afford counsel. *Id.* Further, the individual may request another assessment. *Id.*

Bodle alleges that defendant Velkoff, a psychologist and member of the State Sexual Offenders Assessment Board, evaluated him using only subjective materials while denying Bodle's request for objective diagnostic testing. Bodle also complains that defendant Velkoff placed him into a "Not Otherwise Specified" category, which made it extremely difficult, if not impossible, for him to defend himself at the hearing to determine whether he is a sexually violent predator. Bodle also alleges that although Velkoff was aware that on the advice of counsel Bodle could not answer most of his questions because of pending appeals, Velkoff conducted an hour-long interview of Bodle and then testified at the hearing that Bodle was evasive during the interview.

We conclude that defendant Velkoff is entitled to absolute immunity from Bodle's claims against him. First, because witnesses are immune from damages under Section 1983 based upon their testimony in court, *Briscoe v. LaHue,* 460 U.S. 325, 345 (1983), defendant Velkoff cannot be liable based on his testimony that Bodle was evasive during his interview.

Second, individuals who perform evaluative functions at a governmental adjudicative entity's request to assist that entity in its decisionmaking process are entitled to absolute immunity. *See Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006)(psychiatrist who performed evaluation of prisoner at the request of the New Jersey Parole Board entitled to absolute immunity); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (psychiatrist who performed evaluation of prisoner at court's request entitled to absolute immunity from claims that he intentionally falsely diagnosed the prisoner). As set forth above, the State Sexual Offenders Assessment Board performs an assessment of certain individuals at the request of the court. Defendant Velkoff performed the evaluation and diagnosis of Bodle as part of his duties as a member of the State Sexual Offenders Assessment Board. He performed an evaluation and presented his findings to the court in connection with the hearing on whether Bodle should be considered a sexually violent predator. He performed a function integral to the judicial process and is therefore, like the mental health professionals in *Williams* and *McArdle*, shielded by absolute immunity. Accordingly, defendant Velkoff cannot be liable based on his evaluation and diagnosis of Bodle.

**J. All Claims Except the Fourth Amendment Search and Seizure Claim Against Defendants Kriner and Samar Should Be Dismissed Without Prejudice.**

In sum, in its current form the complaint fails to state a claim upon which relief may be granted except as to the Fourth Amendment search and seizure claim against defendants Kriner and Samar. Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In light of this requirement, although this screening merits analysis calls for dismissal of all claims except the Fourth Amendment claim against defendants Kriner and Samar, Bodle should be granted another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. Thus, we recommend that all claims be dismissed, except the Fourth Amendment claim against defendants Kriner and Samar, but that the dismissal be without prejudice to Bodle filing an amended complaint to attempt to state claims upon which relief may be granted.

## IV. **Recommendation.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that

Bodle's application to proceed *in forma pauperis* be granted. **IT IS FURTHER**

**RECOMMENDED** that, with the exception of the Fourth Amendment search and

seizure claim against defendants Kriner and Samar, all claims and all defendants be

dismissed, but that the dismissal be without prejudice to providing Bodle one final

opportunity to endeavor to correct the defects cited in this report, provided that

Bodle acts within 21 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of April, 2013.

S/*Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge